IN THE CIRCUIT COURT
FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

NAOMI TRENARY,

    Plaintiff,

v.

STATE FARM FLORIDA
INSURANCE COMPANY,

    Defendant.

_____/

Case No.: 10-
Division:

**10  06566**

DIVISION K

## **COMPLAINT**

    Naomi Ternary ("Plaintiff") sues State Farm Florida Insurance Company ("Defendant"),
and states:

### **COUNT 1- BREACH OF CONTRACT**

1.    This is an action for breach of contract damages that exceed $15,000.

2.    On or about October 1, 1999, Defendant issued its first property and casualty
policy attached as **Exhibit A**, policy number 98-KG-6376-9, in favor of its insured, the Plaintiff.

3.    Defendant subsequently and annually issued at least eight additional property and
casualty policies in favor of Plaintiff, with the last policy apparently expiring on October 1,
2008.

4.    Plaintiff timely submitted her collapse claim, and on June 10, 2009, October 9,
2009 and March 11, 2010, Plaintiff's claim was partially paid in the total amount of $132,492.25.

5.    However, Plaintiff suffered additional damages as a result of hidden insect
damage and hidden decay, which constitutes collapse under the policy, for which Defendant did
not pay.

6.    Defendant's failure to pay the entire claim is therefore a breach of each of the
nine insuring agreements.

Case 8:10-cv-00973-VMC-EAJ   Document 2   Filed 04/22/10   Page 2 of 24

7.   Plaintiff has retained Cardillo Law Firm to prosecute this action.

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

a)   Compensatory damages including:

      i)   expended repair costs;

      ii)   projected and estimated repair costs;

      iii)   relocation expenses incurred during repairs, including temporary housing, transportation of household personalty, and storage of household personalty.

b)   pre-judgment interest;

c)   attorneys' fees under Fla. Stat. § 627.428;

d)   post-judgment interest;

e)   a jury trial on all issues so triable; and

f)   for such other relief as this Court deems just and proper.

## COUNT 2- BAD FAITH

8.   This is an action under Florida Statutes §624.155(1)(b) for damages that exceed $15,000.

9.   Plaintiff realleges paragraphs 1 through 7.

10.   Defendant paid only part of Plaintiff's claim in the amount of $132,492.25.

11.   On January 15, 2010, Plaintiff filed the Civil Remedy Notice ("CRN") attached as **Exhibit B**.

12.   Defendant has repeatedly taken the position that its only contractual obligation under Coverage A is to pay the policy limits of a single policy, the policy that went into effect on October 1, 2007.

13.    However, as Plaintiff has repeatedly made clear, Plaintiff's loss exceeds the policy limits under that single policy.

14.    Plaintiff's claim was not in any way limited to the 2007/2008 policy, but rather, was unquestionably and demonstrably made under all of the policies described above.

15.    All of the policies issued by Defendant are "occurrence" policies, which generally provide coverage for losses and/or damage occurring within those individual policies.

16.    The collapse loss caused by hidden termite damage and hidden decay occurred gradually and progressively over a period of time.

17.    Unquestionably, as will be demonstrated by entomological and documentary evidence, at least a portion of the loss was occurring and did occur before October 1, 2007.

18.    Thus, Defendant was and is obligated to pay separately under those earlier policies for losses and/or damage which occurred under those earlier policies.

19.    Plaintiff believes that Defendant, as a general business practice in Florida, has improperly taken the position that its contractual liability and obligations for progressive losses occurring over multiple policies is limited to the policy limits of only one policy.

20.    Under all of these circumstances, described above, Defendant failed to attempt in good faith to settle Plaintiff's claims when it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her interests.

21.    All of the acts described above, which violate Florida Statutes §624.155(b)1., occur with such frequency as to indicate a general business practice, and these acts are willful, wanton, malicious, and/or in reckless disregard for the rights of the insureds, entitling Plaintiff to an award of punitive damages under Florida Statutes §§624.155(5).

22.    Further, Plaintiff is entitled to an award of reasonable attorneys fees and costs under Florida Statutes §624.155(4), and have retained undersigned counsel Cardillo Law Firm to prosecute this action.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, attorney's fees and costs pursuant to Florida Statutes §624.155(4), punitive damages pursuant to Florida Statutes §§624.155(5), and such further relief as this Court deems just and proper. Plaintiff demands a jury trial on all issues so triable.

## COUNT 3- UNFAIR CLAIM SETTLEMENT PRACTICES

23.    This is an action under Florida Statutes §624.155(1)(a)1. for damages that exceed $15,000.

24.    Plaintiff realleges paragraphs 1 through 7 and 9 through 20.

25.    Defendant has violated Florida Statutes §624.155(1)(a)1. by committing numerous unfair claims settlement practices under Florida Statutes §626.9541(1)(i).

26.    Specifically, Defendant has violated Florida Statutes §626.9541(1)(i)2. by making material misrepresentations to Plaintiff, to wit: stating to Plaintiff that she was not entitled to any further "collapse" payments above the policy limits of a single policy.

27.    Further, Defendant violated Florida Statutes §626.9541(1)(i)3.a. by failing to adopt and implement standards for the proper investigation of collapse claims with such frequency as to indicate a general business practice.

28.    Defendant violated Florida Statutes §626.9541(1)(i)3.b. by misrepresenting pertinent facts and insurance policy provisions relating to the coverage at issue.

29.    Defendant violated Florida Statutes §626.9541(1)(i)3.c. by failing to properly acknowledge and act properly upon Plaintiff's communications and demands with regard to the

proper scope of payment, occurring with such frequency as to indicate a general business practice.

30.    Defendant violated Florida Statutes §626.9541(1)(i)3.d. by limiting the claim without conducting a reasonable investigation based upon the available information, which occurs with such frequency as to indicate general business practice.

31.    All of the acts described above, which violate Florida Statutes §624.155(b)1., occur with such frequency as to indicate a general business practice, and these acts are willful, wanton, malicious, and/or in reckless disregard for the rights of the insureds, entitling Plaintiff to an award of punitive damages under Florida Statutes §§624.155(5).

32.    Further, Plaintiff is entitled to an award of reasonable attorneys' fees and costs under Florida Statutes §624.155(4), and have retained undersigned counsel Cardillo Law Firm to prosecute this action.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, attorney's fees and costs pursuant to Florida Statutes §624.155(4), punitive damages pursuant to Florida Statutes §§624.155(5), and such further relief as this Court deems just and proper. Plaintiff demands a jury trial on all issues so triable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Peter M. Cardillo
Florida Bar No. 350052
CARDILLO LAW FIRM
2707 W. Azeele Street, Suite 100
Tampa, FL 33609
Telephone: (813) 801-9050
Facsimile: (813) 831-7747
Attorney for Plaintiff

Apr. 6. 2010 12:12PM                                          No. 0025   P. 10



# YOUR
# STATE FARM
# RENTAL DWELLING
# POLICY



EXHIBIT

_A_

## TABLE OF CONTENTS

### DECLARATIONS
Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

| | Begins on Page |
|---|---|
| AGREEMENT | 1 |
| DEFINITIONS | 1 |
| SECTION I - YOUR PROPERTY | |
| COVERAGES | |
| Coverage A - Dwelling | 2 |
| Coverage B - Personal Property | 2 |
| Coverage C - Loss of Rents | 3 |
| Additional Coverages | 3 |
| Inflation Coverage | 5 |
| LOSSES INSURED | 5 |
| LOSSES NOT INSURED | 5 |
| CONDITIONS | 7 |
| SECTION II - YOUR LIABILITY | |
| COVERAGES | 9 |
| Coverage L - Business Liability | 9 |
| Coverage M - Premises Medical Payments | 10 |
| EXCLUSIONS | 10 |
| ADDITIONAL COVERAGES | 13 |
| CONDITIONS | 13 |
| SECTION I AND II - CONDITIONS | 14 |
| OPTIONAL PROVISIONS | 15 |

FP-8177

Includes copyrighted material of State Farm Fire and Casualty Company,
Copyright, State Farm Fire and Casualty Company, 1983,
And also,
Includes copyrighted material of Insurance Services Office with its permission,
Copyright, Insurance Services Office, 1975, 1977

Printed in U.S.A.

Apr. 6. 2010 12:13PM                                   No. 0075   P. 12

# RENTAL DWELLING POLICY - SPECIAL FORM 3

## AGREEMENT

We agree to provide the insurance described in this policy.     provisions of this policy.
You agree to pay premiums when due and comply with the

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the
Declarations. Your spouse is included if a resident of your
household. "We", "us" and "our" mean the Company shown
in the Declarations.

Certain words and phrases are defined as follows:

1. "bodily injury" means bodily harm, sickness or disease.
   This includes required care, loss of services and death
   resulting therefrom. Bodily injury does not include any
   of the following which are communicable: disease,
   bacteria, parasite, virus, or other organism, any of
   which are transmitted by any insured to any other per-
   son. It also does not include the exposure to any such
   disease, bacteria, parasite, virus, or other organism by
   any insured to any other person.

2. "contract" means any written contract or agreement
   wherein the named insured has expressly assumed li-
   ability for damages to which this policy applies.

3. "Declarations" means the policy Declarations, any
   amended Declarations, the most recent renewal notice
   or certificate, an Evidence of Insurance form, or any
   endorsement changing any of these.

4. "insured" means:

   a. if the named insured is designated in the Decla-
      rations as an individual and is a sole proprietor, the
      named insured and spouse;

   b. if the named insured is designated in the Decla-
      rations as a partnership or joint venture, the part-
      nership or joint venture so designated and any
      partner or member thereof;

   c. if the named insured is designated in the Decla-
      rations as other than an individual, partnership or
      joint venture, the organization trustees, directors
      or governors or stockholder thereof while acting
      within the scope of their duties;

   d. any employee of the named insured while acting
      within the scope of that employment;

   e. any person or organization while acting as real es-
      tate manager for the named insured.

   The insurance afforded applies separately to each in-
   sured against whom claim is made, or suit is brought,
   except with respect to the limit of our Company's li-
   ability.

   This insurance does not apply to bodily injury or per-
   sonal injury or property damage arising out of the
   conduct of any partnership or joint venture which is not
   designated in this policy as a named insured.

5. "insured premises" means:

   a. the residence premises;

   b. one or two family premises of which you acquire
      ownership or control and for which you report your
      intention to insure under this policy within 30 days
      after acquisition;

   c. the ways immediately adjoining on land; and

   d. one or two family dwelling premises alienated by
      any insured if possession has been given to others.

6. "motor vehicle", when used in Section II of this policy,
   means:

   a. a motorized land vehicle designed for travel on
      public roads or subject to motor vehicle registration.
      A motorized land vehicle in dead storage on an in-
      sured premises is not a motor vehicle;

   b. a trailer or semi-trailer designed for travel on public
      roads and subject to motor vehicle registration. A
      boat, camp, home or utility trailer not being towed
      by or carried on a vehicle included in 8.a. is not a
      motor vehicle;

FP-8127                                          Printed in U.S.A.



3

ed insured while acting
nployment;

while acting as real es-
d Island.

s separately in such in-
made, or suit is brought,
nit of our Company's li-
group.

bodily injury or per-
injury arising out of the
joint venture which is not
insured insured.

of which you acquire
or which you report your
this policy within 30 days

thing on land; and

ing premises alienated by
has been given to others.

in Section II of this policy.

designed for travel on
motor vehicle registration.
n dead storage on an in-
motor vehicle;

signed for travel on public
or vehicle registration. A
ty trailer not being towed
r included in 8.a. is not a

c. a motorized golf cart, snowmobile, or other motor-
ized land vehicle owned by any insured and de-
signed for recreational use off public roads. While
off an insured premises. A motorized golf cart
while used for golfing purposes is not a motor ve-
hicle.

d. a motorized bicycle, tricycle or similar type of
equipment owned by any insured while off an in-
sured premises;

e. any vehicle while being towed by, or carried, on a
vehicle included in 8.a., 8.b., 8.c. or 8.d.

7. "named insured" means the person or organization
named in the Declarations of this policy.

8. "occurrence" when used in Section II of this policy,
means an accident, including exposure to conditions,
which results in:

a. bodily injury; or

b. property damage;

during the policy period. Repeated or continuous expo-
sure to the same general conditions is considered to be
one occurrence.

COVERAGE A – DWELLING

We cover:

1. the dwelling on the residence premises shown in the
Declarations used principally as a private residence,
including structures attached to the dwelling;

2. materials and supplies located on, or adjacent to, the
residence premises for use in the construction, alter-
ation or repair of the dwelling or other structures on the
residence premises;

3. wall-to-wall carpeting attached to the dwelling on the
residence premises; and

4. outdoor antennas.

Except as specifically provided in the SECTION I, ADDI-
TIONAL COVERAGES, for Land, we do not cover land or
any costs required to replace, rebuild, stabilize or otherwise
restore the land.

Dwelling Extension. We cover other structures on the
residence premises, separated from the dwelling by clear

c. personal injury;

9. "personal injury" means injury arising out of one or
more of the following offenses:

a. false arrest, detention or imprisonment or malicious
prosecution;

b. libel, slander or defamation of character; or

c. invasion of privacy, wrongful eviction or wrongful
entry.

10. "property damage" means physical damage to or de-
struction of tangible property, including loss of use of
this property. Theft or conversion of property by any in-
sured is not considered to be property damage.

11. "residence premises" means the one or two family
dwelling, other structures, and grounds which is shown
in the Declarations.

SECTION I – COVERAGES

space. Structures connected to the dwelling by only a fence,
utility line, or similar connection are considered to be other
structures.

We do not cover other structures:

1. not permanently attached to or otherwise forming a
part of the realty;

2. used in whole or in part for commercial, manufacturing
or farming purposes; or

3. rented or held for rental to any person not a tenant of
the dwelling, unless used solely as a private garage.

COVERAGE B – PERSONAL PROPERTY

We cover personal property owned or used by any insured
which is rented or held for rental with the residence
premises or used for the maintenance of the residence
premises. This coverage applies only while the personal
property is on the residence premises or temporarily off
premises for repairs.

2                                                    FORM 3

**Property Not Covered.** We do not cover:

1. articles separately described and specifically insured in this or any other insurance;
2. animals, birds or fish;
3. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those used solely for the service of the residence premises and not licensed for use on public highways;
4. watercraft, including motors, equipment and accessories;
5. aircraft and parts;
6. outdoor signs.

## COVERAGE C - LOSS OF RENTS

The limit of liability for Coverage C is the total limit for all the following coverages.

1. **Fair Rental Value.** If a Loss Insured causes that part of the residence premises rented to others or held for rental by you to become uninhabitable, we cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental but not exceeding 12 consecutive months from the date of loss. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the residence premises rented or held for rental is uninhabitable.
2. **Prohibited Use.** If a civil authority prohibits you from use of the residence premises as a result of direct damage to neighboring premises by a Loss Insured in this policy, we cover any resulting Fair Rental Value loss for a period not exceeding two weeks during which use is prohibited.

We do not cover loss or expense due to cancellation of a lease or agreement.

## ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay the reasonable expense incurred by you in the removal of debris of covered property provided coverage is afforded for the peril causing the loss. Debris removal expense is included in the limit of liability applying to the damaged property. When the amount payable for the actual damage to the property plus the expense for debris removal exceeds the limit of liability for the damaged property, an additional 5% of that limit of liability will be available to cover debris removal expense.
2. **Reasonable Repairs.** We will pay the reasonable cost incurred by you of repairing damage to covered property necessary to protect the property from further damage or loss, provided coverage is afforded for the peril causing the loss. This coverage does not increase the limit of liability applying to the property being repaired.
3. **Trees, Shrubs and Other Plants.** We cover outdoor trees, shrubs, plants or lawns, on the residence premises, for loss caused by the following Losses Insured: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the residence premises, Vandalism or malicious mischief or Theft. The limit of liability for this coverage shall not exceed 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants and lawns nor more than $500 for any one tree, shrub or plant. This coverage may increase the limit of liability otherwise applicable. We do not cover property grown for business purposes.
4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.
5. **Property Removed.** Covered property, while being removed from a premises endangered by a Loss Insured, is covered for direct loss from any cause. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.
6. **Personal Effects.** We will pay up to $500 for loss at the residence premises caused by a Loss Insured to personal effects of others while such property is in your

care, cust
limitation
Personal
person a
plying to

7. Burglary
owned o
for rental
& from a
dence b
has been
entry to
age does
Coverage

8. Arson
which le
fire loss
age may
ever, the
of the nu

9. Land. W
to repla
land nec
ing a cov
to the pr

10. Volcanic
covered
building
the loss
a. volca
b. ash,
c. lava
We will
particula
to a cov
a buildin
One or
72-hour
eruption

---

*Left margin fragments:* ded in perty to the reeds addible to e cost operty image peril se the aired. stdoor dance es in-civil erated ism or or this ability plants shrub ubility grown up to agree-he fire operty is cov-erwise ing re-ssured, verage hite re-sas-jpy coverd mit ap: s at the to per-in your

care, custody or control. This coverage is subject to the limitations and exclusions applicable to Coverage B - Personal Property. This coverage is limited to $100 per person and does not increase the limit of liability applying to Coverage B - Personal Property.

7. **Burglary.** We will pay for loss of personal property owned or used by any insured which is rented or held for rental with the residence premises, when the loss is from a known location within a building on the residence premises when it is probable that the property has been stolen and there is visible evidence of forcible entry to or forcible exit from that building. This coverage does not increase the limit of liability applying to Coverage B - Personal Property.

8. **Arson Reward.** We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

9. **Land.** We will pay up to $10,000 for the cost required to replace, rebuild, stabilize or otherwise restore the land necessary to support the insured dwelling sustaining a covered loss. This may increase the limit applying to the property.

10. **Volcanic Action.** We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:
    a. volcanic blast or airborne shock waves;
    b. ash, dust or particulate matter; or
    c. lava flow.

We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

---

This coverage does not increase the limits applying to the damaged property.

11. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:
    a. fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, leakage from fire extinguishing equipment, volcanic action, falling objects, weight of ice, snow or sleet, water damage, breakage of building glass, all only as insured against in this policy;
    b. falling objects does not include loss of or damage to:
       (a) personal property in the open; or
       (b) the interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object;
    c. water damage means accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam;
    d. hidden decay;
    e. hidden insect or vermin damage;
    f. weight of contents, equipment, animals or people;
    g. weight of rain, snow, sleet or snow which collects on a roof;
    h. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under Items b, c, d, e, and f, unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit applying to the damaged property.

### INFLATION COVERAGE

The limits of liability shown in the Declarations for Coverages A and B will be increased at the same rate as the increase in the Inflation Coverage Index shown in the Declarations.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A and Coverage B separately.

The limits of liability will not be reduced to less than the amounts shown in the Declarations.

If during the term of this policy, the Coverage A limit of liability is changed at your request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

### SECTION I - LOSSES INSURED

**COVERAGE A - DWELLING AND COVERAGE B - PERSONAL PROPERTY**

We insure for accidental direct physical loss to the property described in Coverage A and Coverage B, except as provided in Section I - Losses Not Insured.

### SECTION I - LOSSES NOT INSURED

1. We do not insure for loss to the property described in Coverage A and Coverage B either consisting of, or directly and immediately caused by, one or more of the following:

    a. collapse, except as specifically provided in SEC-
       TION I. ADDITIONAL COVERAGES for
       Collapse;

    b. freezing of a plumbing, heating, air conditioning or
       automatic fire protective sprinkler system, or of a
       household appliance, or by discharge, leakage or
       overflow from within the system or appliance
       caused by freezing, while the dwelling is vacant,
       unoccupied or being constructed unless you have
       used reasonable care to:

        (1) maintain heat in the building; or

        (2) shut off the water supply and drain the system
            and appliances of water;

    c. freezing, thawing, pressure or weight of water or
       ice, whether driven by wind or not, to a fence,
       pavement, patio, swimming pool, foundation, retaining
       wall, bulkhead, pier, wharf or dock;

    d. theft in or to a dwelling under construction, or of
       materials and supplies for use in the construction
       until the dwelling is completed and occupied;

    e. theft of any property which is not actually part of
       any building or structure;

    f. mysterious disappearance;

    g. vandalism and malicious mischief or breakage of
       glass and safety glazing materials, if the dwelling
       has been vacant for more than 30 consecutive days
       immediately before the loss. A dwelling being con-
       structed is not considered vacant;

    h. continuous or repeated seepage or leakage of wa-
       ter or steam from a:

        (1) heating, air conditioning or automatic fire pro-
            tective sprinkler system;

        (2) household appliance; or

        (3) plumbing system, including from, within or
            around any shower stall, shower bath, tub in-
            stallation, or other plumbing fixture, including
            their walls, ceilings or floors;

which occurs over a period of time and results in deterioration, rust, mold, or wet or dry rot. If loss is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

i. wear, tear, marring, scratching, deterioration, inherent vice, latent defect and mechanical breakdown;

j. rust, mold, or wet or dry rot;

k. contamination;

l. smog, smoke from agricultural smudging or industrial operations;

m. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

n. birds, vermin, rodents, insects or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals.

However, we do insure for any ensuing loss from items a. through n. unless the loss is itself a Loss Not Insured by this Section.

2. We do not insure under any Coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss.

a. Ordinance or Law, meaning enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

b. Earth Movement, meaning the sinking, rising, shifting, expanding, or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake,

landslide, mudflow, sinkhole, subsidence and erosion. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in SECTION I, ADDITIONAL COVERAGES for Volcanic Action.

We do insure for any direct loss by fire, explosion other than explosion of a volcano, theft, or breakage of glass or safety glazing materials resulting from earth movement.

c. Water Damage, meaning:

(1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

(2) water which backs up through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3) natural water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for direct loss by fire, explosion, or theft resulting from water damage.

d. Neglect, meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a loss insured.

e. War, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

f. Nuclear Hazard, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by

the nuclear hazard shall not be considered loss caused by fire, explosion, or smoke. However, we do insure for direct loss by fire resulting from the nuclear hazard.

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

## SECTION I - CONDITIONS

1. Insurable Interest and Limit of Liability. Even if more than one person has an insurable interest in the property covered, we shall not be liable:

a. to the insured for an amount greater than the insured's interest; nor

b. for more than the applicable limit of liability.

2. Your Duties After Loss. In case of a loss to which this insurance may apply, you shall see that the following duties are performed:

a. give immediate notice to us or our agent, and in case of theft, vandalism, or malicious mischief, also to the police;

b. protect the property from further damage or loss, make reasonable and necessary repairs required to protect the property, and keep an accurate record of repair expenditures;

c. prepare an inventory of damaged personal property showing in detail, the quantity, description, actual cash value and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

b. defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the residence premises.

However, we do insure for any ensuing loss from items a. and b. unless the ensuing loss is itself a Loss Not Insured by this Section.

3. Loss as

a.

d. as often as we reasonably require:

(1) exhibit the damaged property;

(2) provide us with records and documents we request and permit us to make copies; and

(3) submit to examinations under oath and subscribe the same;

e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) the time and cause of loss;

(2) interest of the insured and all others in the property involved and all encumbrances on the property;

(3) other insurance which may cover the loss;

(4) changes in title or occupancy of the property during the term of this policy;

(5) specifications of any damaged building and detailed estimates for repair of the damage;

(6) an inventory of damaged personal property described in 2.c.;

(7) records supporting the fair rental value loss.

FORM 3

Acr  6  2010 12 16PM                                          No 6075   P  19

**3. Loss Settlement.** Covered property losses are settled as follows:

a. Personal property and structures that are not buildings at actual cash value, up to the applicable limit of liability, at the time of loss. There may be a deduction for depreciation. We will not pay an amount exceeding that necessary to repair or replace.

b. Carpeting, domestic appliances, awnings and outdoor antennas, whether or not attached to buildings, at actual cash value, up to the applicable limit of liability, at the time of loss. We will not pay an amount exceeding that necessary to repair or replace;

c. Buildings under Coverage A at replacement cost without deduction for depreciation, subject to the following:

(1) We will not pay more than the $10,000 limit on Land as provided in SECTION I, ADDITIONAL COVERAGES.

(2) We will pay the cost of repair or replacement without deduction for depreciation, but not exceeding the smallest of the following amounts:

(a) the limit of liability under this policy applying to the building;

(b) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises; or

(c) the amount actually and necessarily spent to repair or replace the damaged building.

(3) We will pay the actual cash value of the damage to the buildings, up to the policy limit, until actual repair or replacement is completed.

(4) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis.

**4. Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

a. repair or replace any part to restore the pair or set to its value before the loss; or

b. pay the difference between actual cash value of the property before and after the loss.

**5. Glass Replacement.** Loss for damage to glass caused by a loss insured shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

**6. Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

**7. Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

**8. Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the date of loss or damage.

**9. Our Option.** We may repair or replace any part of the property damaged or stolen with equivalent property.

FORM 3                                                              FORM 3

Any property we pay for or replace becomes our property.

**10. Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

a. reach agreement with you;

b. there is an entry of a final judgment; or

c. there is a filing of an appraisal award with us.

**11. Abandonment of Property.** We need not accept any property abandoned by any insured.

**12. Mortgage Clause.** The word "mortgagee" includes trustee.

a. If a mortgagee is named in this policy, any loss payable under Coverage A plan be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

b. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

(1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

(2) pays any premium due under this policy on demand if you have neglected to pay the premium;

(3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of

... your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

c. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation takes effect.

d. If we pay the mortgagee for any loss and deny payment to you:

(1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

(2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

e. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**13. No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

**14. Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other insured for this loss.

## SECTION II - LIABILITY COVERAGES

### COVERAGE L - BUSINESS LIABILITY

If a claim is made or a suit is brought against any insured for damages because of bodily injury, personal injury, or property damage to which this coverage applies, caused by an occurrence, and which arises from the ownership, maintenance, or use of the insured premises, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability.

FORM 3

Apr. 6. 2010 12:17PM                                    No. 0925    P. 21

stating | The total limit of the Company's liability for all occurrences
yment | in any one policy year shall not exceed the annual aggre-
 | gate limit shown in the Declarations for Coverage L -
 | Business Liability.

o shall | **COVERAGE M - PREMISES MEDICAL PAYMENTS**
ancel-
 | We will pay the necessary medical expenses incurred or
 | medically ascertained within three years from the date of

an accident causing bodily injury which arises out of a
condition on the insured premises or for which the in-
sured is provided bodily injury liability coverage under this
policy. Medical expenses means reasonable charges for
medical, surgical, x-ray, dental, ambulance, hospital, pro-
fessional nursing, prosthetic devices and funeral services.

y pay-

## SECTION II - EXCLUSIONS

f the | 1. Coverage L - Business Liability and Coverage M -
in the | Premises Medical Payments do not apply to:

 | a. bodily injury, personal injury, or property dam-
n the | age;
y ac-
ive a | (1) which is either expected or intended by an in-
gage | sured; or
nort-
 | (2) to any person or property which is the result of
the | willful and malicious acts of an insured;
the
 | b. bodily injury, personal injury, or property dam-
 | age arising out of the rendering or failing to render
 | professional services;

as- | c. bodily injury, personal injury, or property dam-
any | age arising out of the ownership, maintenance, use,
rting | loading or unloading of:
n of
 | (1) aircraft;
nder
ered | (2) any motor vehicle owned or operated by, or
nce | rented or loaned to any insured; or
you
 | (3) any watercraft owned by or operated by, or
 | rented or loaned to any insured;

 | d. bodily injury, personal injury, or property dam-
 | age arising out of:
our
any | (1) the entrustment by any insured to any person;
bli-
the | (2) the negligent supervision by any insured of any
 | person;
or
ce. | (3) any liability statutorily imposed on any
 | insured; or

 | (4) any liability assumed through an unwritten or
 | written agreement by any insured.

'with regard to the ownership, maintenance or use
of any aircraft, watercraft, or motor vehicle (or any
other motorized land conveyance) which is not cov-
ered under Section II of this policy;

e. bodily injury, personal injury, or property dam-
age caused directly or indirectly by war, civil war,
insurrection, rebellion, revolution, warlike act by a
military force or military personnel, destruction or
seizure or use for a military purpose, and including
any consequence of any of these. Discharge of a
nuclear weapon shall be deemed a warlike act even
if accidental;

f. bodily injury, personal injury, or property dam-
age arising out of premises, other than the insured
premises, or to liability assumed by the insured
under any contract or agreement relating to such
premises;

g. to bodily injury or property damage for which the
insured may be held liable:

(1) as a person or organization engaged in the
business of manufacturing, distributing, selling
or serving alcoholic beverages; or

(2) if not so engaged, as an owner or lessor of
premises used for such purposes, if such liability
is imposed:

(a) by or because of the violation of any stat-
ute, ordinance or regulation pertaining to
the sale, gift, distribution or use of any al-
coholic beverages; or

(b) by reason of the selling, serving or giving of
any alcoholic beverage to a minor or to a
person under the influence of alcohol or

A 3 | 10 | FORM 3

which   causes   or   contributes   to   the
intoxication of any person;

"but part (b) of this exclusion does not apply with
respect to liability of the insured or his
indemnitee as an owner or lessor described in
"(2) above;

h.   the legal liability of any insured for:

(1) any person who is in the care of any insured
because of child care services provided by or at
the direction of:

(a) any insured;

(b) any employee of any insured; or

(c) any other person actually or apparently act-
ing on behalf of any insured;

(2) any person who makes a claim because of bod-
ily injury or property damage to any person
who is in the care of any insured because of
child care services provided by or at the direc-
tion of:

(a) any insured;

(b) any employee of any insured; or

(c) any other person actually or apparently act-
ing on behalf of any insured;

i.   bodily injury or property damage arising out of
the actual, alleged or threatened discharge, dis-
persal, spill, release or escape of pollutants:

(1) at or from premises owned, rented or occupied
by the named insured;

(2) at or from any site or location used by or for the
named insured or others for the handling,
storage, disposal, processing or treatment of
waste;

(3) which are at any time transported, handled,
stored, treated, disposed of, or processed as
waste by or for the named insured or any per-
son or organization for whom the named in-
sured may be legally responsible; or

(4) arose from any site or location on which the
named insured, employee or any contractor or
subcontractor working directly or indirectly on
behalf of the named insured is performing op-
erations:

(a) if the pollutants are brought on or to the site
or location in connection with such oper-
ations; or

(b) if the operations are to test for, monitor,
clean up, remove, contain, treat, detoxify or
neutralize pollutants.

Subparagraphs (1) and (4)(a) of this exclusion do
not apply to bodily injury or property damage
caused by heat, smoke or fumes which result from
a hostile fire or poisoning or asphyxiation due to
escape of fumes from a furnace or flue because of
the malfunction of the furnace or flue.

In addition, Coverage L and Coverage M do not ap-
ply to any cost or expense arising out of any gov-
ernmental direction or request that the named in-
sured test for, monitor, clean up, remove, contain,
treat, detoxify or neutralize pollutants;

As used in this exclusion:

"hostile fire" means one which becomes uncontrol-
lable or breaks out from where it was intended to
be.

"pollutants" means any solid, liquid, gaseous or
thermal irritant or contaminant, including smoke,
vapor, soot, fumes, acids, alkalis, chemicals and
waste.

"waste" includes materials to be recycled, recondi-
tioned or reclaimed.

j.   bodily injury to an employee of the insured arising
out of and in the course of employment by the in-
sured or the spouse, child, parent, brother or sister
of that employee as a consequence of employment
of that employee by the insured.

This exclusion applies:

(1) whether the insured may be liable as an em-
ployer or in any other capacity; and

(2) t
...
bod
of y
(1)
(2)
...
2.   Covera
...
a;  liab
(1)
...
(2)
measure
...
b,  pro
sur
pre
br
d.  bo
gib
or
wo
tor
e.  bo
ag
an
er
eti
liat
Lia
erg
sor

11                                                          FORM 3

(2) to any obligation to share damages with or re-
pay someone else who must pay damages be-
cause of the injury;

k. bodily injury to you or any insured and if residents
of your household:

(1) your relatives;

(2) any other person under the age of 21 who is in
the care of an insured.

2. Coverage L - Business Liability, does not apply to:

a. liability:

(1) for your share of any loss assessment charged
against all members of an association of prop-
erty owners; or

(2) assumed under any unwritten contract or
agreement; or by contract or agreement in
connection with any business of the insured
other than the rental of the insured premises;

b. property damage to property owned by any in-
sured;

c. property damage to property rented to, occupied
or used by or in the care of the insured;

d. bodily injury or personal injury to any person eli-
gible to receive any benefits required to be provided
or voluntarily provided by the insured under any
workmen's or workmen's compensation, non-occupa-
tional disability or occupational disease law;

e. bodily injury, personal injury, or property dam-
age for which any insured under this policy is also
an insured under a nuclear energy liability policy
or would be an insured but for its termination upon
exhaustion of its limit of liability. A nuclear energy
liability policy is a policy issued by Nuclear Energy
Liability Insurance Association, Mutual Atomic En-
ergy Liability Underwriters, Nuclear Insurance As-
sociation of Canada, or any of their successors;

f. personal injury caused by a violation of a penal law
or ordinance committed by or with the knowledge
or consent of any insured;

g. personal injury sustained by any person as a result
of an offense directly or indirectly related to the
employment of the person by the insured;

h. personal injury arising out of any publication or
utterance in item b. of the definition of personal
injury;

(1) if the first injurious publication or utterance of
the same or similar material by or on behalf of
the insured was made prior to the effective
date of this insurance; or

(2) concerning any business or services made by or
at the direction of any insured with knowledge
of the falsity;

i. property damage or personal injury to premises
you sell, give away or abandon, if the property
damage, or personal injury arises out of those
premises.

3. Coverage M - Premises Medical Payments does not
apply to bodily injury:

a. to any person, eligible to receive any benefits re-
quired to be provided or voluntarily provided under
any workers' or workmen's compensation, non-
occupational disability or occupational disease law;

b. from any nuclear reaction, radiation or radioactive
contamination, all, whether controlled or, uncon-
trolled, or however caused, or any consequence of
any of them.

c. to any insured, any tenant or other person regularly
residing on the insured premises or to any em-
ployees of any of the foregoing if the bodily injury
arises out of or in the course of their employment;

d. to any person engaged in maintenance and repair
of the insured premises or alteration, demolition
or new construction of such premises.

M 3                                     13                          FORM 3

# SECTION II -- ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. Claim Expenses. We pay:

   a. expenses incurred by us and costs taxed against any insured in any suit we defend;

   b. premiums on bonds required in a suit defended by us, but not for bond amounts greater than the limit of liability for Coverage L. We are not obligated to apply for or furnish any bond;

   c. reasonable expenses incurred by any insured at our request, including actual loss of earnings (but not loss of other income) up to $50 per day for assisting

# SECTION II - CONDITIONS

1. Limit of Liability. The Coverage L limit is shown in the Declarations. This is our limit for all damages from each occurrence regardless of the number of insureds, claims made or persons injured.

The Coverage M limit is shown in the Declarations. This is our limit for all medical expense payable for bodily injury to one person as the result of one accident.

2. Severability of Insurance. This insurance applies separately to each insured. This condition shall not increase our limit of liability for any one occurrence.

3. Duties After Loss. In case of an accident or occurrence, the insured shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

   a. give written notice to us or our agent as soon as practicable, which sets forth:

     (1) the identity of this policy and insured;

     (2) reasonably available information on the time, place and circumstances of the accident or occurrence; and

     (3) names and addresses of any claimants and available witnesses;

us in the investigation or defense of any claim or suit;

   d. prejudgment interest awarded against the insured on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. First Aid Expenses. We will pay expenses for first aid to others incurred by any insured for bodily injury covered under this policy. We will not pay for first aid to you or any other insured.

   b. immediately forward to us every notice, demand, summons or other process relating to the accident or occurrence;

   c. at our request, assist in:

     (1) making settlement;

     (2) the enforcement of any right of contribution or indemnity against any person or organization who may be liable to any insured;

     (3) the conduct of suits and attend hearings and trials;

     (4) securing and giving evidence and obtaining the attendance of witnesses; and

   d. the insured shall not, except at the insured's own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the bodily injury.

4. Duties of an Injured Person - Coverage M - Premises Medical Payments. The injured person, or, when appropriate, someone acting on behalf of that person, shall:

   a. give us written proof of claim, under oath if required, as soon as practicable;

   b. execute authorization to allow us to obtain copies of medical reports and records; and

13                                                      FORM 2

c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. Payment of Claims - Coverage M - Premises Medical Payments. Payment under this coverage is not an admission of liability by any insured or us.

6. Suit Against Us. No action shall be brought against us unless there has been compliance with the policy provisions.

No one shall have any right to join us as a party to any action against any insured. Further, no action with respect to Coverage L shall be brought against us until the obligation of the insured has been determined by final judgment or agreement signed by us.

7. Bankruptcy of any Insured. Bankruptcy or insolvency of any insured shall not relieve us of any of our obligations under this policy.

8. Other Insurance - Coverage L - Business Liability. This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II - CONDITIONS

1. Policy Period. This policy applies only to loss under Section I or bodily injury, personal injury, or property damage under Section II which occurs during the period this policy is in effect.

2. Concealment or Fraud. This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. Liberalization Clause. If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. Waiver or Change of Policy Provisions. A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. Cancellation.

   a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated in this condition by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice:

      (1) When you have not paid the premium, whether payable to us or to our agent or under any finance or credit plan, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.

      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 10 days before the date cancellation takes effect.

      (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy or if the risk has changed substantially since the policy was issued. We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

      (4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary by notifying you at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request can-

14

FORM 3

' cellation, the return premium will be based on our
rates for such cancellation. The return premium may
be less than a full pro rata refund. When we cancel,
the return premium will be pro rata.

d. If the return premium is not refunded with the no-
tice of cancellation or when this policy is returned
to us, we will refund it within a reasonable time af-
ter the date cancellation takes effect.

6. Non-Renewal. We may elect not to renew this policy.
If we elect not to renew, a written notice will be deliv-
ered to you, or mailed to you at your mailing address
shown in the Declarations. The notice will be mailed
or delivered at least 30 days before the expiration date
of this policy. Proof of mailing shall be sufficient proof
of notice.

7. Assignment. Assignment of this policy shall not be
valid unless we give our written consent.

8. Subrogation. Any insured may waive in writing before
a loss all rights of recovery against any person. If not
waived, we may require an assignment of rights of re-
covery for a loss to the extent that payment is made by
us.

If an assignment is sought, any insured shall sign and
deliver all related papers and cooperate with us in any
reasonable manner.

Subrogation does not apply under Section II to Premises
Medical Payments.

9. Death. If any person named in the Declarations or the
spouse, if a resident of the same household, dies:

a. we insure the legal representative of the deceased
but only with respect to the premises and property
of the deceased covered under this policy at the
time of death;

b. insured includes with respect to your property, the
person having proper temporary custody of the
property until appointment and qualification of a
legal representative.

10. Conformity to State Law. When a policy provision is
in conflict with the applicable law of the State in which
this policy is issued, the law of the State will apply.

11. Inspection and Audit. We shall be permitted but not
obligated to inspect your property and operations at any
time. However, our right to inspect or our actual in-
spection and report shall not constitute an undertaking
on your behalf or for your benefit or the benefit of oth-
ers to determine or warrant that the property or oper-
ations are safe or healthful, or are in compliance with
any law, rule or regulation.

We may examine and audit your books and records at
any time during the policy period and within three years
after the final termination of this policy, as far as they
relate to the subject matter of this insurance.

## OPTIONAL POLICY PROVISIONS

Each Optional Provision applies only as indicated in the
Declarations or Extension Certificate.

Option AI - Named Additional Insured. The definition of
insured in this policy includes the person or organization
named in the Declarations as an additional insured or
whose name is on file with us with respect to:

1. Section I: Coverage A - Dwelling;

2. Section II: Coverage L - Business Liability and Cov-
erage M - Premises Medical Payments but only with
respect to the residence premises. This coverage does
not apply to bodily injury to any employee arising out
of or in the course of the employee's employment by the
person or organization.

This option applies only with respect to the location shown
in the Declarations.

Option RC - Replacement Cost - Contents. Under
SECTION I - CONDITIONS, items a. and b. of the Loss
Settlement Condition are replaced with the following:

a. (1) Fence and the following personal property at
actual cash value at the time of loss:

(a) antiques, fine arts, paintings, statuary and
similar articles which by their inherent na-
ture cannot be replaced with new articles;

(b) articles whose age or history contribute
substantially to their value including, but

15

(2/94)

# AMENDATORY ENDORSEMENT
## (Florida)

### SECTION I - LOSSES INSURED

We insure for accidental direct physical loss to property described in Coverages A and B caused by sinkhole collapse, meaning sudden settlement or collapse of the earth resulting from subterranean voids created by the action of water on limestone or similar rock formations. We do not insure against loss caused by abandonment of the property covered.

### SECTION I - LOSSES NOT INSURED

1. The reference to "sinkhole" is deleted from Earth Movement.

2. When covering property in these areas - Broward, Dade, Monroe, Palm Beach and Martin Counties and east of the west Bank of the Intra-Coastal Waterway of Indian River and St. Lucie Counties - we do not cover loss resulting directly or indirectly from windstorm or hail to paint or waterproofing material applied to the exterior of structures on the residence premises. The value of the excluded paint or waterproofing material shall not be considered when determining the value of the damaged structures.

### SECTION I - CONDITIONS

In the condition, Suit Against Us, reference to one year is changed to five years.

### SECTION I AND SECTION II - CONDITIONS

In the condition, Subrogation, the following is added to the first paragraph:

However, we waive any rights of recovery against the corporation or association of property owners of the condominium where the residence premises is located.

In the condition, Cancellation, items b.(2), (3) and (4) are deleted and replaced by the following:

(2) When this policy has been in effect for less than 90 days and is not a renewal with us, we may cancel for any reason. We may cancel by notifying you at least 20 days before the date cancellation takes effect.

(3) When this policy has been in effect for 90 days or more, or at any time if it is a renewal with us, we may cancel if there has been a:

(a) material misstatement;

(b) nonpayment of premium;

(c) failure to comply with underwriting requirements established by us within 90 days of the date this coverage takes effect;

(d) substantial change in the risk covered by this policy; or

(e) cancellation by us of all policies for a given class of insureds.

We may cancel this policy by notifying you at least 45 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, we may cancel at anniversary if there has been a:

(a) material misstatement;

(b) nonpayment of premium;

(c) failure to comply with underwriting requirements established by us within 90 days of the date this coverage takes effect;

(d) substantial change in the risk covered by this policy; or

(e) cancellation by us of all policies for a given class of insureds.

We may cancel this policy by notifying you at least 90 days before the date cancellation takes effect.

In the condition, Non-Renewal, reference to "30 days" is changed to "90 days".

All other policy provisions apply.

# DEBRIS REMOVAL ENDORSEMENT

### SECTION I - ADDITIONAL COVERAGES

Debris Removal is replaced by the following:

1. Debris Removal. We will pay the reasonable expenses you incur in the removal of debris of covered property when coverage is afforded for the peril causing the loss. This expense is included in the limit applying to the damaged property.

We will pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the residence premises when the tree has damaged property covered under Coverage A.

When the amount payable for the property damage plus the debris removal expense exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense.

All other policy provisions apply.

not limited to, memorabilia, souvenirs and collectors items;

(c) property not useful for its intended purpose.

(2) We will not pay:

(a) an amount exceeding that necessary to repair or replace the property; or

(b) an amount in excess of the limit of liability applying to the property.

b. Other personal property, carpeting, domestic appliances, awnings and outdoor antennas, whether or not attached to buildings, and other structures (except fences) that are not buildings under Dwelling Extension, at the cost of repair or replacement at

the time of loss without deduction for depreciation, subject to the following:

(1) We will pay the cost of repair or replacement but not exceeding the smallest of the following amounts:

(a) replacement cost at time of loss;

(b) the full cost of repair;

(c) any special limit of liability described in the policy; or

(d) any applicable Coverage A or Coverage B limit of liability.

(2) Loss to property not repaired or replaced within one year after the loss will be settled on an actual cash value basis.

IN WITNESS WHEREOF, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of this Company at the agency hereinbefore mentioned.

*Laura P. Sullivan*

Secretary

*Jon N Sto*

President

The Board of Directors, in accordance with Article VII(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

FORM 3